RAIPE, Respondent, vs. GORRELL and another, Appellants.

*February 2 — February 27, 1900.*

*Findings by referee: Review on appeal: Exceptions: Master and servant: Compensation: Deductions for absences: Consideration.*

1. General exceptions to the court's order of confirmation of a referee's report are sufficient to enable the appellate court to review specific exceptions taken to the referee's findings, subject to the rule that the appellate court will, in its discretion, refuse such review where exceptions to the report are numerous, and it is uncertain what disposition the trial court may have made of some of them, and, in such case, the judgment will be reversed with directions to the court below to pass specifically on the exceptions.

2. Under a contract of hiring for a specified term, in the absence of an express stipulation or custom, the employee is not entitled to compensation for time lost without fault of either party. Right to deduct for absence will not be lost merely by payment of the stipulated salary at stated periods.

3. The surrender of the right to deduct for absences is to be inferred readily in view of a nearly general practice so to do, and may be predicated either on a theory of settlement, a practical construction of the contract by acts of the parties, or, in the absence of fraud or mistake, voluntary payment of wages for the lost time specifically, with the intention to make it as such and not as a payment generally on the contract.

4. Plaintiff, employed by defendants for one year on a salary payable weekly, being absent for one week, his salary was paid as usual, with the statement by one of defendants that once, under like circumstances, he (defendant) had been deprived of his salary, but

Raipe vs. Gorrell and another.

that he would not treat plaintiff so. Subsequently defendants stated that their accounts were balanced by a payment then made, there being no deduction made for plaintiff's absence. *Held*, that the facts supported both a practical construction of the contract in favor of plaintiff's contention, and a voluntary payment without intention to make deductions for time lost, and that defendants were not entitled to withhold that payment from subsequent wages or to recover it back by suit.

5. Where plaintiff was engaged to work for defendants at a stated salary, expense incurred in boarding defendants, and work, not contemplated in the original contract, performed by plaintiff, are sufficient consideration to support a subsequent agreement granting him commissions in addition to his salary.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed*.

On January 10, 1896, the defendants, having a general agency for the Iowa Life Insurance Company, entered into a written agreement with the plaintiff whereby he agreed for one year to devote all his time, energy, and ability in working life insurance for said company as state agent, under defendants' direction, with headquarters at Milwaukee, paying his own expenses, he to be allowed to pay not exceeding twenty per cent. commission to parties assisting him in procuring business, or for discount of notes, for which the defendants agreed to furnish him an office, and to pay him as full compensation the sum of $75 per week each Saturday for fifty-two consecutive weeks, and also a bonus of $100 if the commissions received by the defendants as a result of plaintiff's work exceeded a certain sum. It also contained a promise of future employment, with commissions on renewal premiums from the business written by him during the year of the contract. He commenced work on January 17, 1896, and ceased work at the close of the 16th day of January, 1897. Plaintiff claims that in February or March, he having found expenses heavy, defendants being in the habit of making his residence their hotel when they came

to Milwaukee, which was frequently, and the defendants also calling on him to devote much time and attention to the renewal of old policies, the defendants agreed further that he should have the right to retain all of the twenty per cent. authorized to be expended for helpers and discount, which he did not so expend. At the time of the making of the contract the plaintiff was under indictment in Illinois: for an alleged offense, which necessitated his absence from business for a period of eight days during the month of April. The defendants had no knowledge of this fact, but, when the trial came on, lent quite enthusiastic aid to the plaintiff in his defense, advanced to him for attorney's fees. and other expenses something over $200, sent him his weekly salary for the week while he was in Illinois, and on April 29 wrote him, assuring him of their assistance, saying: "I found in my litigation with the Home Insurance Co. that my friends were all right so long as I had plenty of money, and it cost me $25,000. I was under salary with the Mutual Life Co., but, the moment I went into the suit, that was stopped, and I had to look elsewhere for funds. The writer will not treat you so. We will treat you just as we will want you to treat us after this suit is over." Upon the termination of the trial, plaintiff returned to Milwaukee, and continued, as before, through the year, his salary being paid weekly, with some deductions to apply on the advances made to him by the defendants, and on December 10 a remittance was made by letter to his wife, saying: "I inclose you draft for $86.67. This will liquidate Mr. Raipe's bill entirely, and the $65 that I agreed to allow him for stamps. See statement inclosed herewith, which please receipt and return." Early in the last week of the contract year the defendants sent plaintiff $20.71. On January 2 defendants first claimed that the plaintiff owed them an additional week's work to compensate the time lost during the trial.

Plaintiff sues to recover the balance of $75 for the last week, and $374.17 for undisbursed portion of the twenty per cent. of premiums on insurance procured by him.

Defendants, by their answer, denied performance of his contract by failure to work for one week, and also counter-claimed for the time so lost, and for expenses incurred by him in excess of the twenty per cent. of premiums allowed by the contract.

The action was referred, and the referee filed so-called findings of fact: "*First.* That the defendants are indebted to the plaintiff for his services for the last week of the year he was in their employ in the sum of $75. *Second.* I find that the defendants are indebted to the plaintiff in the sum of $289.14, the same being the balance of the twenty per cent. commission on business written by said plaintiff not used in paying helpers. . . . *Fifth.* I find that all the items of the defendants' counterclaim not covered by the allowance made the defendants in the second finding of fact are not proven, and are, therefore, disallowed." A total of $343.43 was found due.

Defendants filed separate exceptions to these findings, and to the report, and moved to modify the report by setting aside all of said findings and the conclusion of law. The plaintiff moved for confirmation. The court, after hearing argument, made an order confirming the report of the referee in all respects, to which order the defendants excepted generally, whereupon judgment was entered, from which defendants appeal.

For the appellants there was a brief by *Wheeler & Perry,* and oral argument by *L. G. Wheeler.* They contended, *inter alia,* that there can be no recovery by the employee for the time he was absent. 14 Am. & Eng. Ency of Law, 778; *Bast v. Byrne,* 51 Wis. 531; *Diefenbach v. Stark,* 56 Wis. 462; *Jennings v. Lyons,* 39 Wis. 553; *Prentiss v. Ledyard,* 28 Wis. 131; *Dickinson v. Norwegian P. Co.* 101 Wis. 157, 161. The

claim for commissions cannot be allowed because there was no consideration therefor.  1 Beach, Modern Law of Contracts, §§ 4, 5, 165 and cases cited; *Stilk v. Myrick*, 2 Campb. 317; *Bartlett v. Wyman*, 14 Johns. 260; *Ayres v. C., R. I. & P. R. Co.* 52 Iowa, 478; *Rollins v. Marsh*, 128 Mass. 116; *Vanderbilt v. Schreyer*, 91 N. Y. 392; *Rogers v. Rogers*, 139 Mass. 440; *King v. D., M. & N. R. Co.* 61 Minn. 482.

For the respondent there was a brief by *John M. Clarke*, attorney, and *Ryan, Ogden & Bottum*, of counsel, and oral argument by *L. M. Ogden*.

Dodge, J.  1. Sufficiency of the general exception to the court's order of confirmation, in order to enable review of the specific exceptions taken to the referee's findings, is challenged.  While such review cannot be had in absence of any exception to the order of confirmation (*Momsen v. Atkins, ante*, p. 557), we have recently held, at least impliedly, that a general exception will suffice (*Hinz v. Van Dusen*, 95 Wis. 503, 506; *Small v. Prentice*, 102 Wis. 257); although, as was said in *Lemke v. Daegling*, 52 Wis. 498, this court will exercise its discretion to refuse such review where exceptions to referee's report are numerous, and it is uncertain what disposition the trial court may have made of some, and to reverse with directions to the court below to pass specifically on the exceptions.  In this case we see no reason to decline to examine the exceptions to the referee's findings, which were each and all effectually overruled by the order of confirmation.

2. The findings of fact are very imperfect, in that they seem to assert legal conclusions, rather than any facts. Neither the first nor second is a statement of any conclusion of fact reached by the referee from the evidence, and without them the judgment for plaintiff can be sustained only on the ground that a judgment will not be reversed if the evidence supports it.  *Wilkinson v. Wilkinson*, 59 Wis.

557. Whether such support exists we must ascertain from the record as an original question. In a contract of hiring for a given time, if nothing be said and there be no custom, the employee is not entitled to compensation for time lost without fault of either party. Rendition of service is the consideration for promise to pay wages. *McDonald v. Montague,* 30 Vt. 357; *Bast v. Byrne,* 51 Wis. 531; *Prentiss v.* *Ledyard,* 28 Wis. 131. Such right to deduct for absences will not be lost merely by payment of salary at the stated periods. Some other acts or conduct are necessary to that result. It has, however, been held in this state, as well as elsewhere, that a surrender of such right is to be inferred readily. The practice is so nearly general, in cases of employment by the year or by the month, not to impose upon an employee loss of wages for short absences, that such inference is likely to result in enforcing the real understanding of the parties. The case of *Dickinson v. Norwegian P. Co.* 101 Wis. 157, and the case therein cited of *Prussing V. Co. v. Meyer,* 26 Ill. App. 564, illustrate this tendency of the courts. They both proceed upon the theory of settlement, and also on that of a practical construction of the contract by acts of the parties. A third principle upon which may be predicated surrender of the right at the end of the period of employment to withhold wages for time lost is that of voluntary payment. If one pays money to another voluntarily, without mistake or fraud, he cannot reclaim it. *Custin v. Viroqua,* 67 Wis. 314, 320; *Deuster v. Mittag, ante,* p. 459; *Clarke v. Dutcher,* 9 Cow. 674. Such principle controls the subject in hand if the evidence discloses a payment of the wages for the lost time specifically with the intention to make it as such, and not as a payment generally on the contract, and if not by mistake as to material facts. Such payment is voluntary, and the court will not allow the employer afterwards to change his mind, and either withhold it from subsequent wages or recover it back by suit.

In the present case there is much to support both a practical construction of the contract in favor of the plaintiff's contention, and to establish a payment of the wages for the week of absence in April voluntarily, under the rule above stated. The letter of April 29, quoted in the statement of facts, written at the very time of plaintiff's absence from work, bears no other construction than that the defendants did not intend to subject plaintiff to loss of salary by reason of that interruption. The words, " I was under salary with the Mutual Life Co., but, the moment I went into the suit, that was stopped, and I had to look elsewhere for funds. The writer will not treat you so," seem to us conclusive of the intention on the part of the defendants that the payment then made was intended for that week, and was made without any intention to reclaim it. Plaintiff certainly was entitled to place that construction upon it, and, so doing, to adjust his business or personal expenses according to such reliance. This view was confirmed by the continued payments weekly, making deductions therefrom from time to time of other claims in favor of the defendants, but with no suggestion of any claim by reason of the loss of time. While those payments, of themselves, might not be conclusive, nor entirely inconsistent with the expectation that plaintiff would work an additional week, or would be deprived of payment for the last week in the year, yet they are far more consistent with the other theory, especially when they follow the letter above quoted. Especially significant was the remittance of December 10, accompanied by the letter quoted in the statement of facts, which can bear no other construction than that all defendants' claims against plaintiff were understood to be satisfied; that no others then existed. We are convinced that a preponderance of the evidence establishes that the week of absence in April has been paid for voluntarily and without mistake, and, as a result, that the last week of employment is not paid for except for

$20.71, for which the judgment credits defendants. This branch of the judgment is, therefore, sustained by the evidence, and should stand, even in absence of any finding of fact.

3. The second finding quoted above probably indicates that the referee concluded that the alleged verbal agreement for allowance to the plaintiff of the twenty per cent. commission, less such as he might need to pay out for helpers and discount, was made. That probability is rendered practical certainty by the referee's opinion; but again, there is no finding of such fact. The so-called second finding is nothing but a conclusion of law, except, possibly, as to the arithmetic. Here again, however, the parties being in direct conflict with each other, we think the preponderance of the evidence is cast in favor of the plaintiff's claim by the several letters written by defendants. In the letter of May 21 defendants write: "My contract is on a basis of sixty per cent., and that is all I can allow anybody, and, after allowing you twenty per cent. from that, it leaves me at a loss on your business thus far; but I do not intend to complain about that. I agreed to give you so much money for one year's work, whether I make or lose." In the letter of November 2 the defendants write: "Why is it you give Davies ten per cent. when the contract is five per cent.? You see you have spoiled your own income there." On November 2 he writes plaintiff's wife: "I have earnestly recommended that he allow his man Davies five per cent., instead of ten per cent., and Mr. Williams five per cent., and then he has ten per cent. leeway. Now, suppose we discount the notes five per cent., he still has five per cent. . . . If he can get his helpers for ten per cent., he can make ten per cent. on every dollar he writes." In the letter of November 18 the defendants write: "You must discount your notes when the application is completed, and settle with your helpers yourself. You have twenty per cent. to

go upon besides your salary, and you must stand or fall upon that." We do not overlook the language of the letter written by the plaintiff October 18, in which he says: " But you see how conscientious I have been in keeping your proportion up to the highest mark, and not going over five per cent. or ten per cent. on Dodgeville business." Nor the explanations offered by the defendant. Taking all these into consideration, however, we cannot avoid the conclusion that the parties made an agreement such as contended for by the plaintiff.

Defendants insist that there could have been no consideration for such an agreement for the reason that plaintiff was, by the original contract, required to devote all his abilities to the work; but it is apparent that at the time this additional arrangement was made he had found expenses unexpectedly burdensome. He had accorded, and was expecting to accord, the defendants hospitalities at his own house, and, in addition, he was yielding to the calls of the defendants to devote much attention to the keeping in force of old policies, which was evidently not the work contemplated by the contract, and which was less beneficial to him than the soliciting of new policies, for it diminished the likelihood of his earning the $100 bonus at the end of the year; it diminished the volume of policies upon which he would be entitled to commissions if a new contract was made for succeeding years; and it impaired the record of his office, which, obviously, from the correspondence, was a matter of some moment to him, he being anxious to make as large as possible a showing of development of business. Such consideration is entirely adequate for the slight increase of compensation. We therefore conclude that the evidence establishes plaintiff's right to these commissions, and, as no complaint is made of the amount found due, which involves as well the amount of the allowance to the defendants on their counterclaim for payments in excess of the twenty per

cent. to helpers and for discount, we may consider the allowance made by the second so-called finding justified by the evidence, and that the judgment is right, and should not be disturbed.

*By the Court.*— Judgment affirmed.